602 S.E.2d 51

Richard ADKINS, Shakur Ali, Kelly Ayers, Phillip Barnett, Terry Beachum, Phillip Bennett, Bobby Boozer, John Brannon, Christopher Brown, Norman Bryson, Bernard Byrd, Sirrico Burnside, Bradley Cain, Donnie Clark, Francis Coker, John Cosby, Robert Davila, Billy Joe Davis, Bobby Davis, Terry Elliott, David Ellison, Robert Elmore, Garnell Evans, Anthony Frazier, Calvin Garrett, Charles Gove, Willie Gray, William Griffin, Claude Hamrick, Floyd Hamilton, David Harig, James Heatherly, James Hicks, Demetric Hill, Joey Irby, William Joel Jackson, Hubert Jacobs, James Jeffries, Robert Jones, Robert Johnson, Andrew Kelly, Willie Ladson, Ricky Major, Alvin Manigault, Lavaul Manigault, Larry McClary, Earl McCoy, Benjamin McInnis, Phillip Meredith, Randall Miller, John Millwood, Johnny Minter, Timothy Moore, Tony Mossberg, Jerry Neal, Kendrick Nesbitt, Walter Owens, Ricky Paige, Gerald Pridmore, Darrell Pryor, Ronald Pryor, David Teiner, Gregory Scott, Michael Scott, Michael Shell, Robert Simpson, Ralph Sims, Christopher Smith, Arthur Stephenson, Dean Stevens, Leroy Sullivan, Dennis Thomason, Douglas Thompson, Eric Thompson, Douglas Tittus, Albert Todd, Donald Todd, Stevie Upton, Richard Ward, Frank Weathers, Herman Whitehead, Anthony Wilson, and Charlie Wright, Appellants,

v.

SOUTH CAROLINA DEPARTMENT OF CORRECTIONS, Respondent.

No. 25860.

Supreme Court of South Carolina.

Heard April 21, 2004.

Decided Aug. 23, 2004.

414

Harry Leslie Devoe, Jr., of New Zion, for appellants.

Lake E. Summers and Vinton D. Lide, both of Vinton D. Lide & Associates, of Lexington, for respondent.

Justice WALLER:

This case involves interpretation of S.C.Code Ann. Sections 24–3–40, 24–3–410, and 24–3–430 (Supp.2002) (the Prevailing Wage statutes). Appellants, Inmates confined within the South Carolina Department of Corrections (DOC), instituted this action asserting they were entitled to certain wages pursuant to the statutes. The circuit court ruled the statutes provided no private right of action for Inmates. We affirm in result.

## FACTS

Inmates, while housed at Tyger River Correctional Institute, were employed in a Prison Industries/Private Sector Program, for Standard Plywoods, making "Anderson Hardwood Floors." At the time of their initial employment, Inmates were paid a .25 per hour "training wage." After 160

hours, they were paid a .75 per hour "training wage." [1] After completion of 320 hours, Inmates were paid the minimum wage of $5.15 per hour.

Inmates filed this Tort Claims action,[2] maintaining their training wages and hourly wages did not satisfy the Prevailing Wage statute, S.C.Code Ann. § 24-3-430(D);[3] they contended the prevailing wage for work of a similar nature ranged from $9.00-$14.00 per hour, and that DOC's failure to pay wages in accordance with the statute was grossly negligent.

The circuit court ruled the applicable statutes did not give rise to a private cause of action in Inmates. The court further held the DOC was paying Inmates in accordance with the statutes, and that, in any event, Inmates had not established DOC's method of payment was grossly negligent, as required to maintain a Tort Claims action.

## ISSUE[4]

Did the circuit court err in holding the Prevailing Wage statutes did not create a private right of action in Inmates?

## DISCUSSION

In 1995, the General Assembly enacted 24-3-430, authorizing the DOC to use inmate labor in private industry. Section 24-3-430 provides:

(A) The Director of the Department of Corrections may establish a program involving the use of inmate labor by a nonprofit organization or in private industry for the manufacturing and processing of goods, wares, or merchandise or the provision of services or another business or commercial enterprise considered by the director to enhance the general welfare of South Carolina.... Inmates participating in

---

1. The policy of paying a training wage ended July 1, 1999.

2. S.C.Code Ann. § 15-78-10 et seq.

3. Section 24-3-430(D) provides that "[n]o inmate participating in the program may earn less than the prevailing wage for work of similar nature in the private sector."

4. In light of our holding, we need not address Inmates' claim that the trial court erred in denying their motion to transfer the case to the jury roster.

such labor shall not benefit in any manner contradictory to existing statutes.

(B) The director may enter into contracts necessary to implement this program. The contractual agreements may include rental or lease agreements for state buildings or portions of them on the grounds of an institution or a facility of the Department of Corrections and provide for reasonable access to and egress from the building to establish and operate a facility.

(C) An inmate may participate in the program established pursuant to this section only on a voluntary basis and only after he has been informed of the conditions of his employment.

(D) **No inmate participating in the program may earn less than the prevailing wage for work of similar nature in the private sector.**

(E) Inmate participation in the program may not result in the displacement of employed workers in the State of South Carolina and may not impair existing contracts for services.

(F) Nothing contained in this section restores, in whole or in part, the civil rights of an inmate. No inmate compensated for participation in the program is considered an employee of the State.

(G) No inmate who participates in a project designated by the Director of the Bureau of Justice Assistance pursuant to Public Law 90–351 is eligible for unemployment compensation upon termination from the program.

(H) The earnings of an inmate authorized to work at paid employment pursuant to this section must be paid directly to the Department of Corrections and applied as provided under Section 24–3–40.[5]

Inmates assert the circuit court erred in ruling the "the prevailing wage statute did not create a right to sue for [them] and was not enacted for [their] benefit."

■■ Initially, we note that the DOC's failure to pay a certain wage simply does not constitute a tort so as to be

---

5. Section 24–3–40 allows an inmate's wages to be distributed for restitution, child support, purchase of incidentals for the inmate, state and federal taxes, and 10% in an interest bearing account for the benefit of the prisoner.

cognizable under the Tort Claims Act. Further, even if this were a Tort Claims case, the circuit court correctly ruled the DOC was immune from liability under S.C.Code Ann. § 15–78–60(5) (governmental entity not liable for loss resulting from the exercise of discretion or judgment by the governmental entity or employee or the performance or failure to perform any act or service which is in the discretion or judgment of the governmental entity or employee). In any event, we agree with the circuit court that the statutes relied upon by Inmates do not give rise to a private, civil cause of action.

■■■■ The primary consideration in deciding whether a private cause of action should be implied under a criminal statute is legislative intent. *Dorman v. Aiken Communications, Inc.*, 303 S.C. 63, 398 S.E.2d 687 (1990). "The legislative intent to grant or withhold a private right of action for violation of a statute or the failure to perform a statutory duty, is determined primarily from the language of the statute.... In this respect, the general rule is that a statute which does not purport to establish a civil liability, but merely makes provision to secure the safety or welfare of the public as an entity is not subject to a construction establishing a civil liability." *Whitworth v. Fast Fare Markets of South Carolina, Inc.*, 289 S.C. 418, 420, 338 S.E.2d 155, 156 (1985). Where a statute does not specifically create a private cause of action, one can be implied **only if the legislation was enacted for the special benefit of a private party.** *Citizens for Lee County v. Lee County*, 308 S.C. 23, 416 S.E.2d 641 (1992) (emphasis supplied). Given that the overall purpose of the prevailing wage statute is to prevent unfair competition, and to aid society and the public in general, we cannot conclude that the statutes in question were enacted for the special benefit of Inmates.

Section 24–3–410 is entitled "Sale of prison-made products on open market generally prohibited; penalties." Violation of the statute is a misdemeanor and, upon conviction, a person must be fined not less than two hundred nor more than five thousand dollars or imprisoned for not less than three months nor more than one year, or both. S.C.Code Ann. § 24–3–410(C). Although section 24–3–430 does not specifically set forth criminal penalties, section 24–3–420 states that "Any person who willfully violates any of the provisions of this

article other than § 24-3-410 shall be guilty of a misdemeanor and, upon conviction, shall be confined in jail not less than ten days nor more than one year, or fined not less than ten dollars nor more than five hundred dollars, or both, in the discretion of the court." Nothing in the statutes indicates a legislative intent to create civil liability for a violation of the statutes. Accordingly, they do not give rise to a private right of action.[6] Cf., Linder v. Insurance Claims Consultants, Inc., 348 S.C. 477, 560 S.E.2d 612 (2002) (criminal statutes which prohibit unauthorized practice of law do not give rise to private right of action); Dorman v. Aiken Communications, Inc., 303 S.C. 63, 398 S.E.2d 687 (1990) (construing § 16-3-730, prohibiting publication of name of victim of criminal sexual conduct, as a criminal statute created primarily for the protection of the public, such that it does not create a private right of action).[7]

■ However, notwithstanding our holding that Inmates have no private civil cause of action, they are not without a remedy. In accordance with the companion case of Wicker v. South Carolina Dept. of Corrections, 360 S.C. 421, 602 S.E.2d 56, 2004 WL 1877947 (2004), we hold Inmates may file an inmate grievance to protest DOC's failure to pay wages in accordance with the mandatory statutory provisions.

**AFFIRMED IN RESULT.**

TOAL, C.J., MOORE and BURNETT, JJ., concur.
PLEICONES, J., concurring in a separate opinion.

---

6. The trial court relied upon federal cases interpreting the Ashurst–Sumners Act, 18 U.S.C. § 1761, to support its findings that the prevailing wage statute does not give rise to a private cause of action in inmates. In light of our holding, we need not address federal caselaw. However, we note the trial court's ruling is supported by the caselaw. See Harker v. State Use Industries, 990 F.2d 131 (4th Cir.), cert. denied 510 U.S. 886, 114 S.Ct. 238, 126 L.Ed.2d 192 (1993); McMaster v. Minnesota, 819 F.Supp. 1429 (D.Minn.1993).

7. The concurrence would hold inmates have a private cause of action under the South Carolina Payment of Wages Act. S.C.Code Ann. §§ 41-10-10, et seq. (Supp. 2003). However, S.C.Code Ann. § 41-10-80(C) provides that "[i]n case of any failure to pay wages due to an **employee** ... the **employee** may recover in a civil action." Notably, section 24-3-430(F) of the Prevailing Wage statute specifically states that "[n]o **inmate compensated for participation in the program is considered an employee of the State.**" (emphasis added). In my view, this further evinces a legislative intent not to create a private right of action.

Justice PLEICONES, concurring:

I agree with the majority that the inmates in this matter do not have a cause of action under the Tort Claims Act. I conclude, however, that the Prevailing Wage Statute [8] was intended for the benefit of the Inmates.[9]  *Citizens for Lee County v. Lee County,* 308 S.C. 23, 416 S.E.2d 641 (1992). In my opinion, the fact that the Legislature provided for the distribution of part of these wages to pay the inmate's legal obligations while incarcerated, and included a provision providing for the return of the wages escrowed for the inmate's benefit upon his release, is evidence that § 24–3–430 was intended for the welfare of the inmate, not the general public. S.C.Code Ann. § 24–3–40 (Supp. 2003). I would hold that an inmate who claims not to have been paid the prevailing wage is entitled to proceed under the South Carolina Payment of Wages Act. S.C.Code Ann. §§ 41–10–10, *et seq.* (Supp.2003).[10] Accordingly, I concur in the majority's decision upholding the circuit court's dismissal of this Tort Claims suit, but do not join the holding that the inmates' remedy is an administrative grievance.

---

8.  S.C.Code Ann. § 24–3–430 (Supp.2003).

9.  I agree that it was also intended for the benefit of private industries whose products or services could be impacted if unfair competition resulted from underpayment of wages to inmate laborers.

10.  Under the Payment of Wages Act, "Employer" is defined to include the employer and that employer's agents. § 41–10–10(1). The Prison Industries Act provides "the employer of a prisoner authorized to work ... in a prison industry program ... shall pay the wages directly to the Department of Corrections ..." and then requires the Department to distribute those wages. § 24–3–40. In my opinion, the Department of Corrections, as agent of the employer, is subject to an inmate's claim made pursuant to the Payment of Wages Act.