747 S.E.2d 770

**16 JADE STREET, LLC, Respondent/Appellant,**

v.

**R. DESIGN CONSTRUCTION CO., LLC.; Carl R. Aten, Jr., Individually and in his capacity as principal and agent of R. Design Construction Co., LLC; Catterson & Sons Construction; Michael S. Catterson, Individually and in his capacity as principal and agent of Catterson & Sons Construction, Defendants,**

**of whom, Carl R. Aten, Jr., is Appellant,**

**and**

**Michael S. Catterson, Individually and in his capacity as principal and agent of Catterson & Sons Construction, is Respondent,**

**R. Design Construction Co., L.L.C., Third–Party Plaintiffs,**

v.

**Kintz Electric, Third–Party Defendant.**

**Appellate Case No. 2009–146786.**

**No. 27305.**

Supreme Court of South Carolina.

Heard Oct. 17, 2012.

Decided Aug. 28, 2013.

Mary Bass Lohr, Thomas A. Bendle, and William T. Young, III, all of Howell, Gibson & Hughes, P.A., of Beaufort, for Appellant.

Jeffery A. Ross, of Clawson & Staubes, LLC, of Charleston, for Respondent.

E. Mitchell Griffith, Michael D. Freeman, and Matthew D. Cavender, of Griffith, Sadler, & Sharps, P.A., of Beaufort, for Respondent–Appellant.

Justice HEARN.

Carl Aten, Jr. appeals the circuit court's order finding him personally liable for torts he committed as a member of a limited liability company (LLC). Although this case poses the novel question of whether the Uniform Limited Liability Company Act (LLC Act) shields an LLC member from personal liability from his own torts, we save that discussion for another day and find Aten has committed no actionable tort. We therefore reverse the portion of the circuit court's order which imposes personal liability upon Aten.

## FACTUAL/PROCEDURAL BACKGROUND

R. Design Construction Company, L.L.C. is engaged in the construction industry. Aten and his wife are the only members of R. Design, and Aten holds a residential home builder's license. R. Design selected a parcel in Beaufort, South Carolina, on which it planned to build a four-unit condominium project. When Aten could not secure the necessary financing, he approached Dennis Green, who formed 16 Jade Street, LLC to develop the property. R. Design then entered into a contract with Jade Street to construct the condominium. Aten signed the contract as a member of R. Design and not in his personal capacity.

As part of the deal, R. Design was to be paid $150,000 to serve as the general contractor for the project, and it alone was in charge of choosing subcontractors. One of the subcontractors selected by R. Design was Catterson & Sons Construction, Inc. Michael Catterson, the sole shareholder of Catterson & Sons, was a subcontractor with a special framing license in addition to a general contractor's license. Catterson

& Sons' scope of work was focused primarily on framing and aerated autoclave concrete (AAC) block [1] installation.

As the general contractor, R. Design was to supervise the project. Thus, whenever Catterson had a question about the work he was to perform or any issues that arose, he would ask Aten. Furthermore, Catterson & Sons was to implement the design standards specified by Aten and R. Design. Catterson himself, however, did not actually perform any construction but served mainly as the liaison between the foreman and his own workers.

Several months after construction began, problems arose concerning the AAC block installation and the framing. Green called Kern–Coleman, the structural engineer, to perform an inspection. The initial inspection identified four defects, but Green pressed on, following Aten's assurances that these problems would be addressed. However, the problems did not abate. Following a progress payment dispute, Catterson & Sons left the job site and did not return. In the ensuing months, Aten's relationship with Green deteriorated as Aten tarried in fixing the defects, and the construction eventually ground to a halt. R. Design subsequently left the project, never replacing Catterson & Sons nor adequately addressing the defects.

The day after R. Design left the project, Kern–Coleman conducted another inspection of the property. This time, it identified thirty-four defects in addition to the original four, which had not yet been remedied, for a total of thirty-eight. Anchor Construction was retained as the new general contractor, and its own inspection revealed sixty defects in the original construction. After Anchor began working on the project, more defects surfaced.

Jade Street subsequently sued R. Design, Aten, Catterson & Sons, and Catterson for negligence and breach of implied warranties. Jade Street also filed a breach of contract claim against R. Design and Aten.[2] Following a bench trial, the

---

1. AAC blocks are preformed concrete blocks with cavities that, when stacked, permit rebar and grouting mortar to be inserted to provide structural support.

2. R. Design brought cross-claims against Catterson and Catterson & Sons for equitable indemnity and breach of contract. Aten also filed a

circuit court found in favor of Jade Street as follows: (1) against R. Design for breach of contract, negligence, and breach of implied warranties; (2) against Catterson & Sons for negligence and breach of contract; and (3) against Aten personally for negligence in failing to supervise the subcontractors. In rejecting Aten's argument that the LLC Act shielded him from personal liability, the circuit court additionally pointed to the fact that Aten held a residential home builder license and was therefore more than a "mere member" of the LLC. It concluded the statutes pertaining to the license create civil liability for the licensee. The court imposed no liability against Catterson himself. Ultimately, the circuit court awarded Jade Street $925,556 in damages for its claims and awarded the same amount to R. Design for its breach of contract claim against Catterson & Sons. This appeal followed.

This Court affirmed the circuit court as modified in a decision published April 4, 2012. We subsequently granted Aten's petition for rehearing on May 4, 2012. We now withdraw our previous opinion and issue this opinion.

## ISSUES PRESENTED

I. Did the circuit court err in finding Aten can be held personally liable for negligent acts he committed while working for an LLC of which he was a member?

II. Did the circuit court err in not finding Catterson personally liable for the tortious acts of Catterson & Sons?

## LAW/ANALYSIS

### I. ATEN'S PERSONAL LIABILITY

 Aten argues the provisions of the LLC Act, as enacted in South Carolina, shield a member of an LLC from personal liability for ordinary negligence committed while working in furtherance of the LLC and therefore the circuit court erred in finding him individually liable. However, prior to addressing the statute's construction, we turn first to the threshold question of whether Aten owed a duty of care upon which to

third-party complaint against Kintz Electric, an electrical subcontractor. Issues relating to these claims were not raised on appeal.

establish a negligence claim. The circuit court concluded the Residential Home Builders Act creates a legal duty for a residential builder license holder. We disagree.

The main factor in determining whether a statute imposes a legal duty is legislative intent. *Doe v. Marion*, 373 S.C. 390, 396, 645 S.E.2d 245, 248 (2007). Whether the legislature intended to create a private cause of action for the violation of a statute is determined primarily by the language of the statute. *Id.* Generally, if a statute does not expressly establish civil liability, a duty will not be implied absent evidence the legislature enacted the statute for the benefit of a private party. *Id.* at 397, 645 S.E.2d at 248.

Section 40–59–400 of the South Carolina Code (2005) codifies the definitions of terms used in the Residential Home Builders Act and provides the following relevant definitions:

(5) "Resident licensee" means a licensed practitioner who spends a majority of each normal workday working out of a principal or branch office and who is in responsible charge of the office and the building services provided from that office including, but not limited to, responsibility for applying for permits for the firm.

(6) "Responsible charge" means the direction of building services by a residential builder, residential specialty contractor, or home inspector to the extent that successful completion of the building services is dependent on the personal supervision, direct control, and final decisions by the qualified registrant to the extent that *the qualified registrant assumes professional responsibility* for the building services.

(emphasis added). Based on this language, the circuit court concluded that as a resident licensee, Aten assumed professional responsibility for the project and, furthermore, that the use of the term professional responsibility "is broad enough to include civil liability."

We reject this construction of the statute. Nothing in the language of the statute evinces a legislative intent to create such a legal duty, nor was this statute enacted for the benefit of a private party. The provisions in question concern the issuance of certificates of authorization for a company engaging in residential home-building, specialty contracting, or

home inspection and serve essentially to define terms used within a subsection the Residential Home Builders Act. Section 40–59–410 of the South Carolina Code (2005) requires the company to identify a resident licensee in "responsible charge" of each principal or branch office. § 40–59–410(B)(1), (D), & (H). The statute therefore requires at least one person in each office of the company to be licensed and assume professional responsibility for the project. However, we disagree with the court's conclusion that professional responsibility is tantamount to civil liability. The only consequences imposed by virtue of an individual's license are to be meted out specifically by the appropriate licensing board, not a civil court. *See* S.C.Code Ann. § 40–1–110(1) (2005) (listing the acts for which the licensing board can sanction a licensee, including when he "lacks the professional or ethical competence to practice the profession"); § 40–59–110 (2005) (stating additional grounds for which a residential contractor, specialty contractor, or home inspector can be sanctioned). Thus, we decline to construe these statutes so broadly as to create a duty in tort.

Accordingly, we find the circuit court erred in finding Aten personally liable because he owed no duty to Jade Street. We therefore find it unnecessary to reach the novel issue of whether the LLC Act absolves an LLC member of personal liability for negligence committed while acting in furtherance of the company business. *Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (holding the Court need not address remaining issues when disposition of prior issue is dispositive).

## II. CATTERSON'S PERSONAL LIABILITY

Jade Street also appeals the circuit court's conclusion that Catterson himself is not personally liable for the actions of Catterson & Sons. We affirm pursuant to Rule 220(b), SCACR, and the following authorities: S.C.Code Ann. § 33–6–220(b) (2006) ("[A] shareholder of a corporation is not personally liable for the acts or debts of the corporation except that he may become personally liable by reason of his own acts or conduct."); *Aaron v. Mahl*, 381 S.C. 585, 591, 674 S.E.2d 482, 485 (2009) ("In an action at law, tried by a judge without a

jury, the findings of the trial court must be affirmed if there is any evidence to support them.").

## CONCLUSION

For the foregoing reasons, we reverse the circuit court's holding that Aten is personally liable and affirm the court's finding that Catterson is not personally liable for the acts of Catterson & Sons.

TOAL, C.J., PLEICONES and KITTREDGE, JJ., concur.

BEATTY, J., concurring in result only.